MACHIAS LUMBER COMPANY *vs.* INHABITANTS OF MACHIAS.

Washington.     Opinion March 7, 1923.

*The owner of logs on which a tax has been assessed in order to be entitled to an abatement must show that the logs were, on the first day of April of the year of assessment, actually or constructively employed in some place other than that where the tax was assessed, either in the mechanic arts or in trade; and further show that such owners on the first day of April occupied in such other place for such employment either a store, shop, storehouse, wharf, mill or landing place.*

In the instant case the plaintiff has failed to show either that the logs so assessed were employed in trade in the town of Whitneyville on April 1st, 1922, or that it was occupying any store, shop, storehouse, mill, wharf or landing place for the purpose of employing such logs in trade in said town.

If such logs were to be employed in trade it was not in Whitneyville, but in the town of Machias where its main business was located.

It is not the mere ownership of a river bank where logs may be hauled out, but a landing place set apart, prepared and occupied on April 1st, for the purpose contemplated by the statute, that fulfills the requirements.

It is not decided that a place on a bank of a river where logs may be, or are hauled out, that is, a place merely for receiving logs, and not used in connection with their sale or the sale and delivery of the products manufactured from them is a landing place within the meaning of the statute.

On report.   This is a process by petition seeking an abatement of taxes assessed by the town of Machias on logs April 1, 1921.   On April 1, 1921, the petitioner was the owner of approximately fifty-five hundred cords of pulp wood logs which it had cut during the preceding winter on its lands near the headwaters of Machias River and landed them during the winter on Machias River, its lakes and tributaries, where they were on April 1, 1921, intending to drive them as soon as the driving season opened, to a landing place in the town of Whitneyville, where the petitioner was intending during the summer of 1921 to erect a mill for cutting up and rossing the pulp wood.   The petitioner had its place of business in the town of Machias where a tax of $840 was assessed on these logs for the year of 1921, and paid by the petitioner under protest.   The question involved was as to

whether these logs were taxable on April 1, 1921, in the town of Machias, or in the town of Whitneyville under R. S., Chap. 10, Sec. 14, Par. I.

From the refusal of the assessors of the town of Machias to abate the taxes and return the money paid an appeal was taken to the Supreme Judicial Court where a hearing was had before the presiding Justice, and by agreement of the parties the cause was reported to the Law Court. Appeal dismissed.

The case is fully stated in the opinion.

*C. B. & E. C. Donworth,* for petitioner.

*Phillips B. Gardner,* for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

WILSON, J. An appeal to the Supreme Judicial Court from the decision of the assessors of the town of Machias refusing an abatement of taxes and a return of the sum paid in discharge thereof under Secs. 78-83, Chap. 10, R. S. The case was heard in the court below by the presiding Justice and comes before this court on report.

In the winter of 1920-21 the petitioner which conducts a lumber business and has its principal place of business in the town of Machias cut approximately fifty-five hundred cords of pulp wood on the upper reaches of the Machias river and its tributaries which was put into the river in the log in the spring of 1921 with a view to landing it in the town of Whitneyville where the petitioner was proposing during the summer of 1921 to erect a mill for cutting it up and rossing it, as it is termed, which is a mechanical process for removing the bark.

The petitioner had, in 1918, purchased a tract of land in the town of Whitneyville, on the bank of the Machias River and convenient of access to the Maine Central Railroad and situated about three miles above its main plant at Machias. This land was acquired with the intention of erecting thereon a plant for cutting up and rossing pulp wood and shipping therefrom by rail.

It was not until the winter of 1921, however, that any steps were taken by the petitioner to carry out such intent; and in January of that year it purchased machinery for its proposed mill and ties and rails for a railroad track to connect it with the main track of the Maine Central Railroad, but nothing was done on the site toward the

erection of the mill until sometime in May of the same year.    It was not finished ready for operation until October or November of 1921, and owing to the state of the market no products of the mill have yet been sold.

In the spring of 1921 the pulp wood logs cut by the petitioner the previous winter were put into the river with other logs intended for its plant at Machias, with the intent when they reached Whitneyville of sorting out the pulp wood logs and landing them there for cutting up into the customary lengths and rossing or preparing them for sale and shipment.

About the time the drive reached Whitneyville, which was in May, forest fires broke out endangering the petitioner's property and the drive was halted, the logs hauled out on the banks at various points along the stream above Whitneyville, and the crew taken from the drive to fight forest fires.

Until the drive reached Whitneyville, no preparation had been made by the petitioner to sort and land any logs at its proposed mill site; but in May a sorting boom, so called, was constructed across the river above the proposed mill site and a side boom for holding the logs intended for the new plant was strung from and along the shore to the sorting boom.    About five hundred cords of the drive were sorted in May and turned into the side boom, which after the mill was completed in the fall of 1921 were cut and rossed.    From time to time the remainder of the 1920-21 cut was put into the stream and floated down to the sorting boom and the pulp wood logs turned into the side boom at Whitneyville.    A small amount of the pulp wood logs got by the sorting boom and were taken out and sold at Machias, but it appears from the evidence that it was not by any design of the petitioner, and, therefore, had no bearing on the determination of this case.

To entitle the petitioner in this case to the abatement of the tax assessed on these logs by the town of Machias, which is conceded to be the town in which the petitioner may be considered as an inhabitant April 1st, 1921, it must establish two main propositions:    First, that the logs in question were on April 1st, being actually or constructively employed in the town of Whitneyville either in the mechanic arts or in trade, omitting the erection of buildings and vessels as having no possible connection with the case; and, second, that on April 1st it occupied in said town for such employment either a store, shop, storehouse, wharf, mill or landing place.

Whether the cutting up of logs into pulp wood lengths or the rossing of them can be said to be a mechanic art, it is not necessary to decide, because it is not contended that the petitioner on April 1st, 1921 was occupying any mill or other plant in Whitneyville for such purpose.

The plaintiff bases its claim for relief upon the ground that the logs in question were on April 1st, 1921 employed in trade in Whitney-ville and that it was on that date occupying a landing place within the meaning of the statutes.

We are of the opinion that it has failed in both respects. This case does not fall within *Farmingdale* v. *Berlin Mills Co.*, 93 Maine, 333, where the defendant company had had in the plaintiff town on April 1st of the year in which the tax was laid a long established business, and where it was selling the manufactured product to the local trade as well as to its customers elsewhere, but clearly falls within the rules laid down in *New Limerick* v. *Watson*, 98 Maine, 379; *McCann* v. *Minot*, 107 Maine, 393, and *Morton* v. *Wilson*, 115 Maine, 70. The evidence reported does not disclose any intent or expectation of selling any of this pulp wood locally or that there was any possible local market. On the contrary the evidence discloses only one purpose, to ship by rail to points where pulp mills are located, and that all such sales would be negotiated and made at its principal place of business in Machias. The petitioner like the owner of the starch in *New Limerick* v. *Watson*, the owner of the lumber in *McCann* v. *Minot*, and the owner of the potatoes in *Morton* v. *Wilson* intended to employ it in trade when prepared for market, not in the town where it was prepared, but in the town where the owner's main business was located, viz.: Machias.

But even if it were so employed in Whitneyville, we think the evidence as reported fails to establish that the petitioner was occupy-ing any landing place in that town on April 1st, 1921 within the meaning of the statute. Assuming for the moment that in con-nection with its employment in trade a landing place as used in the statute includes a place used solely for landing or receiving logs on the bank of a river as well as a place for shipment in case of sale as in *Gower* v. *Jonesboro*, 83 Maine, 142 and *Georgetown* v. *Hanscome*, 108 Maine, 131, the evidence only goes to show that the petitioner was on April 1st occupying a site for a proposed landing place. It was not until May, according to the evidence, that it actually converted it into a landing place for receiving these logs in connection with the

proposed mill by the construction of the necessary booms. It is not the mere ownership of a river bank where logs may be hauled out, but a landing place set apart, prepared and occupied for the purpose on April 1st that fulfills the statute.

This court in order to carry out the purpose of the provisions of Sec. 14 of Chap. 10, R. S., has held that logs cut, but not actually located in a town on April 1st, but intended for employment or use in a mill located therein, may be held to be constructively in that town as of the first day of April for purposes of taxation, *Inhabitants of Ellsworth* v. *Brown*, 53 Maine, 519; but it has not yet gone so far as to hold that a mill, store, shop, storehouse, wharf, or landing place not actually in existence on April 1st, but intended to be constructed later, even though preparation for construction had already begun, was constructively in existence and occupied as of the first day of April in order to meet the requirements of Par. I, of Sec. 14 of Chap. 10.

There is no occasion for straining the language of the statute to accomplish this result. The property does not escape taxation. Except as to rates it should be immaterial to the owner where he pays his tax.

Entry will be:

*Appeal dismissed.*